Judge Marshall
delivered the Opinion of the Court.
This bill was filed by Buckner, as a bill of review, to reverse and set aside a decree rendered in 1824, in a suit in Chancery brought by Mary Forker against him. *51 The decree sought to be reversed by it, rescinds a contract for the sale, of three hundred and ninety and a half acres of land, by Buckner to Mi’s. Forker; decrees a re-conveyance of the land by the latter to the former, and a re-payment of so much of the purchase money as had been paid (being $>200,) with interest from the 8th of December, 1819, and enjoins perpetually the collection of that portion which remained due, being about three hundred and forty dollars with interest. The present bill assigns various errors in the decree, and alleges, also, that sometime after its rendition, the complainant had discovered that, before the hearing, his title papers had been withdrawn from this suit, and filed in another suit in the same Court, in which Mrs. Forker was sued for the same land, under an adversary entry „ 11,., , • ,-,i i j. , &c. and had, m her answer, set up his title, and retcrred to the same evidences of title which were exhibited by him m her suit against him.
. .... . A bill of review should not be ^g“naw°after a lapse of’time a wrnTf°erroi^ unless the delay counted for/
But this allegation, which seems to be presented as the ground of a review on account of a discovery of fact since the former decree, would be insufficient to authorize a bill ’ of review, if it were true, without showing the strongest reasons why it was not discovered before the decree was rendered; and if it were sufficient, it is wholly unsustained by evidence. The record of the former suit shows that the parties were .present by their counsel at the hearing; and an admission then made as to the existence of one important link of the title of Buckner, creates a strong presumption that, the title papers referred to were then among the papers. There was, therefore, no discovery of fact i-i n , • ■ r i aii which would authorize a review ox the case. And although we are of opinion that, the decree complained of is erroneous in several particulars, and especially in not providing fully for placing the parties in statu quo:-yet as this bill was not filed until near nine years after the former decree was rendered, and as no sufficient ground is shown for not having prosecuted a writ of error for its reversal, or for not having filed a bill of review for its reversal, within the time limited for the prosecution of writs of error, we are of the-'opinion that *52 the bill of review should not now be sustained as to errors of law upon the record.
A bill was filed to reverse a former decree: but the grounds are net sufficient to sustain it as a bill of review. Nev ertheless, it appearing that the party(now def’t) who had obtained that decree , had, under color of executing it, iniquitously and oppressively deprived the other party of important benefits that were intended to be secured to him by the decree ; and, as he not on Iy prays for general relief, but es pecially for the correction of those irregularities, and offers to perform the decree on his part: it is held, that the bill may be considered as a bill to have the benefit of the for mer decree; and that such relief as the pleadings and proof entitle the comp’t to , may be afforded.
A purchaser of land — who had obtained the pos session — filed a bill for a rescis sion of the contract; obtained a decree to that ef feet, and for $200 —restoration of purchase money. The decree also directed her (the comp’t) to re-convey the land. —She made the deed , acknowledged it, and left it for record in the clerk’s office. This was done without the know ledge or consent of the grantee.— She then issued her execution on the decree for the $200, which was levied upon the same land ; the sheriff sold it , and she became the purchaser at $61 — lessthan a tenth of the price at which it was formerly sold to her. For the bal anee of the decree, another execution issued , and was levied on other land of the def’t — 300 acres, which was. also sold , and purchased ( by the same pltf. in ex’on) at $141. She afterwards died, having devised the first of the two tracts to devisees who obtained the sheriff’s deed for it; the other descended to heirs,who also obtained a deed : — If there were defects in the sheriff’s deeds, that fact could not be used to defeat the sales, in a court of equity, where the defects could be remedied.-As to the last mentioned tract of land — as the decree for the $200 was independent and absolute, and might be enforced by execution, and the sale was regular in form, the defendant in the ex’on (present comp’t) can have no relief, as to that tract_.As to the other tract — query whether a deed made without the grantee’s knowledge, and which he had never received, passed any title.-The due execution of the decree required-that the vendor of the land (upon the rescission of the contract,) should have the possession restored to him, as well as a re-conveyance; and, as that was not done, he has not had the benefit of the decree; the proceedings in re-conveying the land, as above, are held to be a fraud upon the decree, and upon the vendor against whom it was obtained; and it is therefore held, that he is entitled to a decree for a re-conveyance and restoration of the possession — upon the re-payment of the balance of the purchase money received by him. The devisees, coming in as volunteers under the fraudulent purchaser, can be in no better situation than she was in, and are subject to the same decree.
*52 But although this bill cannot be effectual for producing a review and reversal of the decree, yet, as it makes out a case of great injustice and oppression, occasioned by the inequitable and irregular acts of Mrs. Forker, whereby, under color of executing the decree, she has deprived Buckner of all the benefit to which he was entitled under it, and which he would have derived from its regular execution, and1 as he prays, not only for general relief, but especially for the correction of these irregularities, and offers, on his part, to perform fully what was required by the decree — we are of opinion that the bill may be taken as a bill to have the benefit of the decree on his part, and, as a mean's of carrying it properly into effect, to clear away the irregularities which have been occasioned by the attempts of Mrs. Forker, to carry it into execution in her own way and for her own exclusive benefit. Viewing the bill in this aspect, we are of opinion, that the complainant is entitled to relief to some extent, on the pleadings and proof.
The facts are substantially these. In December, 1819, Buckner sold and conveyed to Mrs. Forker (then Mrs. Welch,) three hundred and ninety and a half acres of land in Bullitt county. Before the decree rescinding the contract was rendered, she had obtained a judgment-in ejectment for the land, and, as it may be assumed from several circumstances in the case, and particularly from the uncontradicted allegation of the present complainant, had also obtained the actual possession, or the attornment of the tenants. On the 20th of August, 1820, the decree of rescission was pronounced, requiring her, on or before the 1st day of October following, to re-convey the land to Buckner, and decreeing, in general terms, a re-payment of the two hundred dollars, which had been paid by her, with interest &c. On the 1st of September, in the absence of Buckner, and without his knowledge or consent, she executed a deed purporting to convey the land to him, which she acknowledged, and lodged for record in the proper *53 office, on the same day. On the 3rd of the same month, she caused a writ of fieri facias to issue on the decree, had it levied on the same land, and on the 11th day of November, it was sold by the sheriff, and she became the purchaser, at the price of sixty one dollars, in notes of the Bank of the Commonwealth of Kentucky, equal to about one half of that sum in specie. On the 6th * day of December, a second fieri facias was issued on the decree, which was levied on three hundred acres of land owned by Buckner, in the same county, and which was sold by the sheriff, and purchased by Mrs. Forker, at the price of one hundred and forty one dollars — leaving still a balance due on the decree, which, in 1835, when it was enjoined by an amended bill in this suit, amounted to about one hundred and twenty dollars.
In 1825, Mrs. Forker died, having first devised the tract of three hundred and ninety and a half acres to a son and grandson, who have since received a sheriff’s deed for the same. Her heirs have also received a similar deed for the other tract, which was undevised.— And neither tract appears to have been disposed of by the devisees or heirs, all of whom are defendants in this suit. There is, therefore, no claim upon the land derived from Mi’s. Forker for a valuable consideration, but the defendants are all volunteers under her. And the case stands precisely as it would do if she were living and had not parted with her claim.
Objections are made to the sufficiency of the sheriff’s deeds to pass the title to the two tracts of land. But these are legal objections, which do not belong to this *54 case in the aspect in. which we are considering it. If the purchase of the lands is valid in equity, the insufficiency of the conveyances may be supplied, and gives complainant no right in this suit. There being no specific proof or allegation of fraud, except such as is to be implied from the circumstances as above stated'— the question is whether, upon these facts, the complainant has received the benefit of the decree, or has been improperly deprived of it, and if thus deprived, how far, and by what means, can he be restored to it upon equitable principles.
• The decree having given Mrs. Forker the right to ■ pursue the collection of the two hundred dollars with interest, independently of the obligations on her part, growing out of the rescission of the contract, she was at liberty, without the performance of these obligations, to obtain satisfaction by the seizure and sale of other property than that which had been the subject of the rescinded contract, remaining bound to the performance, and liable to the enforcement of the obligations which devolved on her. As, therefore, the sale of the three hundred acres of land not embraced in the contract was unaffected by the relations between the parties consequent upon the contract and its rescission, but was subject only to the ordinary rules applying to sales of land under execution, and as, according to those rules, no ground is laid in the pleadings and proof in this cause, for the action of a court of equity upon that sale, the complainant can have no relief upon this ■ bill. As to that sale, and as to that part of the case, the decree dismissing the bill, without prejudice to any other remedy for questioning the validity of that sale, was proper.
But the three hundred and ninety and a half acres of land, which had been the subject of the rescinded contract, stands upon different grounds. In the first place, it may be seriously questioned whether the deed made by Mrs. Forker, in the absence and without the knowledge of Buckner, and without acceptance by him, could have had any operation as a transfer of title to him. (McClain vs. French, 3 Mon. 385.) And if it did not, it fol *55 lows, not only that Buckner has never received the benefit expressly reserved to him by the decree, but also, that the subsequent levy, sale and conveyance did not pass his title, because he had nothing but an equity under the' decree, which had not been effectuated by a conveyance. Under these circumstances, we should entertain no doubt as to the propriety of now, either decreeing a proper conveyance, or setting aside the proceedings founded upon the colorable conveyance which had been attempted, and permitting the complainant to accept the deed as made — requiring him in either alternative to do equity on his part.
Without, however, deciding whether, under the operation of the decree, the deed might not have passed the title, if not actually objected to by Buckner within a proper period; and without placing the complainant’s right to relief upon the ground that the title could not have been transferred to him without his actual acceptance of the deed — we are of opinion that, there are other circumstances which, taken in connection with the manner of executing the deed, lead to the same result as to the rights of the parties. Being equitably bound by the decree to restore to Buckner what she held under the contract, and especially to convey the title which she had received, Mrs. Forker was, in equity, a trustee of the title, at least if she had received nothing else. And it would seem to be inconsistent with equity to permit a trustee of the title merely, for his own exclusive purposes, at any moment which may suit his own advantage, and without notice to the cestui que trust, to make a formal conveyance of the title, with the sole view of subjecting it to sale, and becoming himself the purchaser. If upon these naked facts, the chancellor should not consider him, after the, purchase, as still holding the title subject to the trust, with only such a lien upon it, for his own benefit, as the terms of the purchase might create, he would certainly require but little additional evidence of fraud, oppression, or inequality, in the transaction, to induce him tp lay his hand upon the purchaser and compel him to an equitable execution of the trust. And, without a recapitulation *56 0f the facts, it is apparent that such circumstances are not wanting in this case.
But, upon the assumption that Mrs. Forker had acquired the possession under her purchase, the case is still stronger. On this hypothesis, she was bound not only to re-convey the title, but also to restore the possession of the land to Buckner. This duty, though not expressly provided for in the decree, is implied in the rescission, which could not be completely executed until it was performed. And as this not only has never been done, but if the proceedings on her part be sustained, never can be done, it is clear that Buclmer has not received the benefit intended to be secured to him by the decree; and the decree of rescission and re-conveyance has not been either literally or substantially performed, unless the acknowledgment of the deed, under the circumstances which have been stated, followed up by the levy of the execution and sale of the land, all intended to deprive him both of the title and the right of being restored to the possession, can be considered as a substantial compliance with the duty of restoring the title and possession to him.
If the land had been sold for an adequate consideration which had been applied to the use of Buckner, this might have been considered as a substantial equivalent for the benefit intended to be secured to him by the decree; and, although the proceeding might not have been altogether appropriate, it could scarcely have been complained of as unjust or oppressive; or, if the sale had been made under circumstances calculated to produce equal competition, and thus to secure a fair price, whatever might have been the result, there would have been no ground for imputing any intention of fraudulently evading the proper operation of the decree, and sacrificing the interest of Buckner under it. But when it is considered that the land sold under Mrs. Forker’s execution, was purchased by her, for less than one tenth of the value fixed upon it by the contract which had been rescinded, that her possession of the land and connection with the title and command of the execution gave her decided advantages in making the purchase; *57 that she had, by her bill and the decree rescinding- the contract for want of title in Buckner, degraded his title and thereby necessarily reduced its value in the .general estimation; that if the ground on which the rescission was prayed for and decreed, was true, he had no title which could be properly sold under execution; and that, under these circumstances, she made the deed without the knowledge of Buckner, for the obvious purpose of subjecting the land under his title to her execution,, there can be no other conclusion but that the proceeding, including the deed, was a fraud upon the decree, instead of a bom fide execution of it.
As the 'Vendée,-. in the case supra, and her devisees have had the use of the land, the vendor is not required to pay interest' on the money he is to refund. But because of his delay .in asserting his right, the rents are not to be applied to extinguish the principal. But should a claim be set up for improvements made on the land, since the purchase under the ex’on, it can, in no event, be allowed beyond the actual enhancement in the value of the land, and may he met by a claim for rents, as far as they will go. For the surplus, if any,,the devisees may obtain a decree.
If, as is well settled, a trustee in possession is not per--■mitted, behind the back of the cestui qüe trust, to purchase in an incumbrance on the estate for his own exclusive-advantage, to the injury of the cestui que trust — much, less could Mrs. Forker, who, from the date of the de- ■' cree, was a trustee in possession, create, in the manner above stated, an incumbrance upon the trust estate,.for ■ her own benefit, and use it for the destruction of the • trust. As she never restored the possession, and as,. having made a merely formal re-transfer of the title for an iniquitous purpose, she regained it immediately by iniquitous means, she may be considered as still holding the title and possession under the rescinded contract,. and the rights of the parties should be regarded as if that which was thus unjustly done, had not been.done at all;, and equity should now be done between them, upon the basis of the decree of rescission, .as if there had been no-attempt by Mrs. Forker to convey this land to Buckner,.. and to re-acquire it by purchase under the execution.— Buckner is therefore entitled to be restored to the land, by a conveyance of the title and surrender of the possession-by the devisees of Mrs. Forker, upon.his making payment of so much of the money decreed against him as was not paid by the sale of the other tract of land above referred to.t
As Mrs. Forker and those claiming under her. have *58 held the possession, Buchner should not be charged with interest after- the date of the decreej and should now pay only what then remained due upon applying the net proceeds of the sale of the three hundred acres, as the only credit. His own neglect to perform, what was required of him by the decree, and his laches in lying by for so many years, during which the devisees of Mrs. Forker may have occupied the land, supposing it to be their own, seem to prohibit the application of the rents or annual value of the land to the extinguishment of the debt due from him under the decree, except so far as to keep down the interest. But should any claim be set up by the devisees, for improvements made since the purchase of the land under Mrs. Forker’s execution, a claim which can in no event be allowed beyond the actual enhancement, occasioned by such improvements, in the value of the tract, then so much of the rents as exceed the interest on Buckner’s debt, may be brought forward as, a set-off against the claim of improvements, but not to be the basis of any decree for money in favor of Buckner, or of any further set-off against the sum due from him under the decree.
No claim for amelioration by improvements being set up in the pleadings, and no fact shown upon which a decree on the subject can now be properly made, it is only necessary to say further, on that subject, that such a claim is not intended to be precluded by this opinion; but that it may be presented on the return of the cause, and, if properly made opt, it should be ascertained in the usual mode, to the extent above indicated, and for any excess, after setting off the proper charge for rents, the devisees may be entitled to a decree. This privilege is allowed, because the account of improvements and rents is incident to, and consequent upon, the restoration of the possession, upon a rescission of the contract; and because the omission by the occupants to state, in their answer, the fact that any improvements had been made, whether arising from accident, or from a reliance on the supposed validity of their title, should not, under the circumstances of this case, bar the claim for ameliorations, if any have in fact been made.
*59 The decree, dismissing the whole bill without prejudice, is reversed, and the cause is remanded with in*-structions to dismiss the bill without prejudice, so far as it seeks relief against the sale of the three hundred acres' of land which was not the subject of the rescinded contract. And upon the residue of the bill, to render a decree in favor of the complainant, upon the principles herein stated; and should proper grounds be made out by the defendants, or such of them as may be entitled, to cause an assessment to be made of rents and ameliorations on the land which is to be restored to the complainant, and to make such decree thereon as may be conformable to equity and the principles of this opinion.